IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAIL K. SMITH, VMD, PhD and<br>KARYL J. HURLEY, DVM,<br>           Plaintiffs,<br><br>        v.<br><br>PRUCO LIFE INSURANCE COMPANY,<br><br>           Defendant. | CIVIL ACTION<br>No. 20-04098 |

**McHUGH, J.**                                                                                                            January 7, 2021

**MEMORANDUM**

This action is rooted in breach of contract. The breach asserted by the Plaintiffs is that the defendant insurance company did not deliver the type of annuity they intended to purchase when the policy was first issued. Specifically, Plaintiffs claim that they sought a joint annuity and that Defendant tendered an individual annuity after the premium was paid. Unfortunately for Plaintiffs, as they have expressly framed the claim in their complaint, the breach occurred in November 2008 when the annuity policy was delivered, rendering this action untimely. I am therefore compelled to grant Defendant's motion to dismiss.

**I.        Facts and Procedural Posture**

On November 7, 2008, Gail K. Smith, VMD, PhD and Karyl J. Hurley, DVM ("Plaintiffs"), authorized their broker, Katerina Simonetti, to purchase an annuity, Contract No. E0753280, from Pruco Life Insurance Company ("Defendant"). *See* Compl. ¶ 7, ECF No. 1. The November 7, 2008 purchase occurred after Simonetti entered an electronic "ticket" to purchase a joint benefit vehicle for the Plaintiffs. *Id.* ¶ 11. In total, Plaintiffs paid approximately $193,000 to Pruco at the inception of the policy. *Id.* ¶ 9. Following the transaction, Plaintiffs

1

received a copy of the policy setting forth the terms of their annuity.[1] Despite Plaintiffs' initial request to purchase a joint annuity, the policy at various points identified "Gail K. Smith" as the contract "owner," an "annuitant," and a "participant." Def.'s Mot. Dismiss Ex. A, at 1, 3, 5, 17, 55. The letter forwarding the policy was addressed solely to Dr. Smith, and the "re" line of the correspondence also specifically identified him as the contract "owner." *Id.* at 3. The policy's only reference to "Karyl J. Hurley" was as the "primary beneficiary," and there were no contingent or secondary beneficiaries. *Id.* at 9. The policy specifically stated that Pruco will "pay the named Participant(s), on the Annuity Payment Date, the first of a series of annuity payments." *Id.* at 15. Dr. Smith was also accorded the right to cancel the policy within 10 days of receiving it. *Id.*

In January 2020, Plaintiffs expressed a desire to begin taking periodic payments from the annuity. *See* Compl. ¶ 10. But on March 30, 2020 and March 31, 2020, Plaintiffs contend that they learned from Defendant, "for the first time, that the vehicle which Simonetti accepted from Pruco, on behalf of Plaintiffs, was not a joint benefit vehicle, but instead, was written on the sole beneficiary status of Gail K. Smith, VMD, PhD, alone." *Id.* ¶ 12.

Plaintiffs filed this suit for breach of contract (Count I), unjust enrichment (Count II), and "bad faith" dealings (Count III) on August 21, 2020. They allege that they have "suffered the loss of the value of their $193,000, and its earnings over the last nearly 12 years, together with

---

[1] Defendants supplied this policy as Exhibit A. *See* Def.'s Mot. Dismiss Ex. A, ECF No. 3-2. I may consider this document at the motion to dismiss stage, as Plaintiffs in part have claimed a violation of the terms of the agreement regarding Contract No. E0753280. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that courts may consider extrinsic evidence when it is "integral to or explicitly relied upon in the complaint"). Plaintiffs dispute whether Exhibit A governs the terms of the bargain but admit its authenticity. *See* Pls.' Resp. Opp'n 5, ECF No. 11 (noting that Pruco transmitted this document "after the contract was consummated, and performance by the plaintiffs was underway").

the benefits promised them by the purchase of a joint beneficiary annuity." *Id.* ¶ 17.  Defendant filed a motion to dismiss on November 9, 2020.

## II.     Standard of Review

In this circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.    Discussion

### A. Plaintiffs' breach of contract claim is untimely

Defendant contends that Plaintiffs' claims are barred by the statute of limitations.  A threshold question is whether the statute of limitations is properly raised at this point.  Courts may only consider a limitations defense raised under Fed. R. Civ. P. 12 if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).  The Third Circuit later observed that a claim may properly be dismissed as untimely where a plaintiff's complaint "clearly suggests that he did in fact have knowledge of the full scope of his injury." *Schmidt v. Skolas*, 770 F.3d 241, 252 (3d Cir. 2014).  Pennsylvania law governs this action.  Because a "cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion," *Fine v. Checcio*, 582 Pa. 253, 266 (2005), I must identify the point at which the breach occurred, as set forth by the factual allegations in Plaintiffs' complaint.

The statute of limitations for breach of contract claims under Pennsylvania law is four years.  42 Pa.C.S. § 5525.  "A claim for breach of contract exists where it can be shown that there was a contract, a breach of a duty imposed by that contract and damages that resulted from the breach." *Koken v. Steinberg*, 825 A.2d 723, 729 (Pa. Commw. Ct. 2003).  The plaintiff

must allege "basic elements" of a contract, including "an offer, acceptance and consideration." *Id.*

Plaintiffs argue that a contract was formed on November 7, 2008, once Simonetti purchased the joint annuity through the electronic ticket. *See* Compl. ¶ 15. They further argue that the issuance of an individual policy constituted a breach. *Id.* ¶¶ 15, 17. Consequently, their breach of contract action first accrued, at the latest, after they received Pruco's annuity policy and the ten-day cancellation window expired. *See Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 832–833 (Pa. Super. Ct. 2005) (stating that the injury occurred when the plaintiff received a policy that did not accurately represent the bargain and "assented to its terms" by not returning it within reconsideration period); *Toy v. Metropolitan Life Insurance Co.,* 863 A.2d 1, 8 (Pa. Super. Ct. 2004). In that regard, Plaintiffs demand damages over a twelve-year period from 2008 to the present. *See* Compl. ¶ 17. Necessarily, given the scope of the damages claimed, the breach first occurred when the individual policy was issued. The fact that Plaintiffs allege continuing harm does not extend the statute of limitations, which began to run once Defendant breached the purported agreement. *See, e.g.*, *Dellape v. Murray*, 651 A.2d 638, 640 (Pa. Commw. Ct. 1994); *Egan v. U.S Expansion Bolt Co.,* 496 A.2d 680, 681 (Pa. Super. Ct. 1983). Because Plaintiffs' claim accrued in 2008, this action falls well outside the four-year period of limitations.

Plaintiffs seek refuge in the discovery rule,[2] which "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should

---

[2] As a general rule, courts have applied the discovery rule to a wide variety of cases, including contract actions. *See, e.g.*, *Morgan v. Petroleum Prods. Equip. Co.,* 92 A.3d 823, 828 (Pa. Super. Ct. 2014) (stating that Pennsylvania's discovery rule "applies to all causes of action, including breach of contract"). Recently, the Commonwealth Court questioned whether the Pennsylvania Supreme Court has indicated a reluctance to extend the discovery rule to contract actions based on an express written negotiated contract. *See Carulli v. North Versailles Township Sanitary Authority*, 216 A.3d 564, 583 (Pa. Commw. Ct. 2019). For purposes of this motion I will assume the discovery rule applies.

know that he has been injured and that his injury has been caused by another party's conduct." *Schmidt*, 770 F.3d at 251.  A plaintiff invoking the discovery rule must establish that she has exercised "reasonable diligence."  *Fine,* 582 Pa. at 267.  The Pennsylvania Supreme Court has described reasonable diligence as an "objective test," but one "sufficiently flexible … to take into account the difference[s] between persons and their capacity to meet certain situations…" *Id.*  Ordinarily, in applying the discovery rule, "the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue."  *Schmidt*, 770 F.3d at 251.  Nonetheless, because of the objective nature of the test, a court may determine the applicability of the discovery rule, as a matter of law, where "the facts are so clear that reasonable minds cannot differ."  *Id*.  *Accord Crouse v. Cyclops Industries,* 560 Pa. 394, 403-404 (2000).  As described by the Pennsylvania Supreme Court in *Fine*: "[u]nder this test, a party's actions are evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest…'" 582 Pa. at 267.

      Plaintiffs have pled that they only discovered Pruco's characterization of the benefit (and breach of the agreement) in early 2020, when they communicated their desire to begin taking periodic annuity payments.  *See* Compl. ¶ 12.  But they have been in possession of the annuity policy, and related documents, for twelve years.  *See* Def.'s Mot. Dismiss Ex. A, at 1.  The policy itself and the correspondence forwarding it clearly and unambiguously make clear that Dr. Smith is the "owner."  *Id.* at 3.  Within the body of the document, only Dr. Smith is listed as "owner," "annuitant" and plan "participant."  *Id.* at 1, 3, 5, 17, 55.  And as noted above, the sole reference to Karyl Hurley is as a beneficiary.  *Id.* at 9.  The policy prominently notes a right to cancel within ten days.  *Id.* at 15.  Plaintiffs do not allege in the complaint that they relied on any

representations by Pruco's agents.  In fact, their interests were separately represented by an independent broker, who owed them a duty of care under Pennsylvania law.  *See Al's Cafe, Inc. v. Sanders Ins. Agency,* 820 A.2d 745, 750 (Pa. Super. Ct. 2003).  The relevant information was not technical or obscure: a simple review of the documents would have immediately revealed that the annuity had been issued in Dr. Smith's name only.  *Compare Dilworth v. Metropolitan Life Ins. Co.*, 418 F.3d 345, 351 (3d Cir. 2005) (concluding that plaintiffs could benefit from the discovery rule where an examination of the policy would not place plaintiffs on notice of the misrepresentation).  The premium payable at the inception of the policy also totaled $193,000, Compl. ¶ 9, a sizable investment by any measure, which created significant incentive for any reasonable purchaser to review what they received from the carrier.

Here, although they invoke the discovery rule, Plaintiffs identify no impediment to their discovering the alleged breach when it occurred, and the breach Plaintiffs assert was self-evident on the face of the policy issued.  And even if one generously assumes that it was not, at a minimum, the issuance of the policy solely in Dr. Smith's name was "reason to awaken inquiry" of Plaintiffs' broker or carrier.  *Fine,* 582 Pa. at 267.  As such, this represents the rare case where reasonable minds could not differ, because if Plaintiffs had exercised any diligence, they could readily have learned of Defendant's purported breach upon receiving the annuity policy in 2008.  *See Toy*, 863 A.2d at 8 (declining to apply the discovery rule where plaintiff made no inquiries regarding necessary documentation for her retirement plan).

B.  <u>Plaintiffs' unjust enrichment claim is untimely</u>

Pennsylvania recognizes a cause of action for unjust enrichment.  *See Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co*., 933 A.2d 664, 668 (Pa. Super. Ct. 2007).  The Supreme Court of Pennsylvania has held that unjust enrichment actions are also subject to a four-year

limitations period. *See Sevast v. Kakouras*, 591 Pa. 44, 53 (2007). Defendant argues that this claim is untimely as well. *See* Def.'s Mem. Supp. Mot. Dismiss 15–16, ECF No. 3-1.

As with Plaintiffs' contract claim, the threshold issue is when the claim accrued. Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract." *Schott v. Westinghouse Elec. Corp.,* 436 Pa. 279, 290 (1969). *See also Gee v. Eberle,* 420 A.2d 1050, 1060 (Pa. Super. Ct. 1980) (A plaintiff "has a right to recover on the promise … The existence of that right, however, precludes a claim of unjust enrichment"). In this case, therefore, unjust enrichment would operate solely as an alternative theory of liability, if Plaintiffs could not establish the existence of an enforceable contract. *See Sevast*, 591 Pa. at 55 (stating that the right to restitution arose "when the contract between the parties ceased").

Plaintiffs assert that a written contract was formed when their broker purchased the annuity through the electronic ticket. *See* Compl. ¶¶ 11, 12. Should a contract exist, Plaintiffs could not pursue an unjust enrichment theory, as the relationship between the parties would be governed by the written contract. If, however, Plaintiffs could not prove that a contract was formed when their broker submitted the electronic ticket seeking to buy an annuity policy (perhaps on the ground that there was no objective "manifestation of mutual assent to the exchange"), *MetroClub Condominium Ass'n v. 201-59 North Eighth Street Associates, L.P.*, 47 A.3d. 137, 144 (Pa. Super. Ct. 2012), the cause of action for unjust enrichment would have begun to accrue once Plaintiffs transferred the premium payments to Defendant. In fact, Plaintiffs plead that the carrier has been unjustly enriched since receipt of the premiums in 2008. *See* Compl. ¶¶ 9, 15, 20, 21. Plaintiffs' claim for unjust enrichment claim, therefore, falls outside the four-year statute of limitations.

Pennsylvania courts have applied the discovery rule to a claim for unjust enrichment, *see e.g.*, *Ruddy v. Mt. Penn Borough Municipal Authority*, Nos. 1120 C.D.2013, 1200 C.D.2013., 2014 WL 1852002 at *3 (Pa. Commw. Ct. May 6, 2014) (non-precedential), but the same analysis from above would apply.  With even a modicum of diligence, Dr. Smith would have discovered around 2008 that he was listed as the sole owner of the annuity.  He could then have asserted the alternative theory of unjust enrichment should a court or jury find that a contract had not been properly formed in the first instance.  Plaintiffs' unjust enrichment claim is therefore barred.[3]

    C.  <u>Plaintiffs fail to state a bad faith claim, and any such claim would be time-barred</u>

Plaintiffs' third count seeks "bad faith damages under Pennsylvania law."  Compl. ¶ 23.  In support of this cause of action, the complaint simply reincorporates other allegations, adding only that, "Pruco possesses no good faith defense supporting its denial of the joint benefit annuity sold to the plaintiffs."  *Id.*

I agree with the defense that Plaintiffs' cursory assertions do not suffice to state a bad faith claim under Pennsylvania law.  Plaintiffs do nothing more than assert their conclusory view of the merits of their contract claim.  Dismissal is warranted on that basis alone.  But to the extent one can infer a theory of bad faith lurking in the complaint, it would also be untimely.  If Plaintiffs are pleading bad faith under the relevant Pennsylvania statute, 42 Pa.C.S. § 8371, a two-year statute of limitation applies.  *Ash v. Cont'l Ins. Co.,* 593 Pa. 523, 536 (2007).  If Plaintiffs are pleading common law bad faith arising out of the carrier's contractual undertaking,

---

[3] It should be noted that Pruco has acknowledged its obligations to pay the benefits owed under the terms of the written annuity policy it issued in November 2008.  *See* Def.'s Mem. Supp. Mot. Dismiss 13 ("Pruco stands ready to disburse funds to Smith from his account value in accordance with the terms of the Smith Annuity").

*see Birth Center v. St. Paul Companies, Inc.,* 567 Pa. 386, 787 A.2d 376 (2001), a four-year statute of limitations would apply.

Regardless of which theory Plaintiffs may intend to assert, the conduct complained of occurred in 2008, when Defendant issued an individual, rather than joint, annuity. Plaintiffs advance no reason why this claim would not also be barred. Even assuming the applicability of the discovery rule to claims for bad faith, Plaintiffs' lack of diligence would defeat its application. Once again, I am compelled to conclude that the claim is untimely.

### IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiffs' Complaint will be granted. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge